Fonda *v.* Penfield.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster Mullin,* and *Morgan,* Justices.

———•◦•———

ADELAIDE FONDA, appellant, *vs.* JOEL B. PENFIELD, executor of &c. of Cortland C. Cooper, deceased, respondent.

A trustee cannot continue the trust after his death, by his last will and testament, whether the trust in his hands be of real or of personal estate.

It is a well settled rule that when a sole trustee, or the survivor of several trustees, dies, the trust cannot, by any act of his, be continued in another person.

A testator, by the 4th clause of his will, directed his executors to pay out of the avails of his estate, to his three children, and to the representatives of a fourth who was deceased, the sum of $3200, that being stated to be the amount or sum received by the testator from the estate of J. C., deceased; to be divided between them in equal proportions. *Held* that there was nothing in that clause, which made the sum of $3200 a debt against the estate, in the ordinary acceptation of the term. That it merely appeared, from the will, that the testator meant to provide for the claim, therein; and that he had made such provision in the form of a legacy.

Fonda *v.* Penfield.

The will also charged the executor with the care and control of the portion of the $3200 bequeathed to each of the legatees, (except one,) until they should severally attain the age of twenty-one years; and it was made his duty, by the terms of the will, to provide for their support and maintenance out of the avails of the estate, until they should reach that age.

*Held* 1. That as to the disposition of this fund, and to the furnishing of such things as were necessary for the legatees, the powers expressly delegated to the executor by the will clothed him, to that extent, with the same duties and rights which by law are devolved upon a general guardian; and that the court not only had the power, but that under the circumstances it was its duty, to sanction the acts of the executor in making expenditures for the support of a legatee, which were conceded to have been necessary, and proper and reasonable in kind and amount.

2. That the surrogate properly allowed to the executor, on the settlement of his account, the items of such expenditures.

3. That the executor, after exhausting, in the support of a legatee, and in specific payments to her on account of her legacy, nearly or quite all of her share of the $3200, was not bound to pay her, from his individual means, the whole of her said share.

APPEAL from a decree of the surrogate of Oswego county, upon the final accounting of the respondent as executor of the estate of the deceased.

The testator, on the 24th of September, 1856, executed his last will and testament, by which he appointed the respondent sole executor thereof, and on the 7th day of January, 1857, died. He left a widow, who was his third wife. She had a daughter aged about fourteen years, who was a member of his family up to the time of his death, and is named in his will, and neither the widow or her daughter had any means of support, except such as was derived from the estate of the testator. He left also, of his own children, James C. Cooper, who was married, and lived apart from the family of the testator; Adelaide Cooper, (now Adelaide Fonda,) the appellant, then aged about sixteen years; Clarissa Cooper, then aged about twelve years; and three grandchildren of a deceased daughter, to wit, William C. Barbour, who died about 1861; George G. Barbour, then aged about ten years, and Isabella Barbour, who had been adopted by the respond-

ent, as a member of his family, upon the death of the testator. After his death, letters testamentary were duly granted to the respondent, and he acted as executor.

So much of the last will and testament of the testator, as in any way related to the questions pending on this appeal, is as follows:

"*First.* I give, order and direct that the executor hereinafter named, out of the avails of my property, pay all my just debts and funeral charges.

*Third.* I will, order, authorize and direct the executor hereinafter named to sell and convey all or any of the real and personal estate of which I may die seised, whenever he shall deem such sale advantageous and proper, and on such terms and at such prices as he may think fit.

*Fourth.* I direct the executors hereafter named, to pay out of the avails of my estate to my three children, James C. Cooper, Adelaide Cooper and Clarissa Cornelia Cooper, and to the three children of my deceased daughter, Emily Barbour, viz: William C. Barbour, George G. Barbour and Isabella Barbour, the sum of three thousand two hundred dollars, it being the amount or sum received by me in trust for them from the estate of James Cooper, deceased, to be divided between them in the following proportions, viz., one fourth part thereof to each the said James C., Adelaide and Clarissa Cornelia Cooper, and the remaining one fourth part thereof, unto the said three children of Emily Barbour, in equal portions, share and share alike, and the portion of my son, James C. Cooper, to be paid to him by the executor hereinafter named, as soon after my decease as it can conveniently be done, consistently, without interfering with other engagements or duties, and to the others, with interest from January 1st, 1857, as soon after they respectively arrive at the age of twenty-one years as it can consistently be done by said executor, and which, when paid to them as above provided, shall be held and possessed by them respectively as their absolute property forever.

*Fifth.* I hereby order, will and direct that the house and lot occupied by me at this time as a residence, and including the lot purchased by me of the estate of Thomas Barbour, directly north of my residence, and including all of the furniture and personal property now in my said dwelling, or so much thereof as may be necessary for the use and comfort of my family, shall continue to be used as a residence for my wife, Margaret Cooper, my daughter Adelaide Cooper, and Clarissa Cornelia Cooper, Ann Amelia Comstock, daughter of my wife, and my grandson, George G. Barbour, during the natural life of my said wife, Margaret Cooper, or so long as she may wish to keep such family together, and take care of them, and for the other persons above named, until they shall respectively attain the age of twenty-one years, unless disposed of as provided in the eleventh item of this my will.

*Sixth.* It is also my will and intention, and I hereby order and direct, that in the case of the death of the said Adelaide Cooper, Clarissa Cornelia Cooper, Ann Amelia Comstock, George G. Barbour, or either of them, before they, or either of them shall attain the age of twenty-one years, that the portion to which such deceased person shall be entitled under the twelfth item of this my will, shall be equally distributed among the survivors of the persons named in the sixth item of my will, and the said James C. Cooper, in equal portions, and in the manner and at the times, as provided in the twelfth item of this my will.

*Seventh.* I hereby order, authorize and direct the executor hereinafter named, out of the avails or income of my estate, to pay and discharge all of the debts and expenses which may be necessary and proper, for the support of all of my family, as follows: For the support of my wife, Margaret Cooper, during her life, and, all of the other children mentioned in the fifth item of this my will, until they shall respectively attain the age of twenty-one years.

Fonda *v*. Penfield.

*Eighth.* I hereby authorize and empower my executor, hereafter named, to reinvest the surplus of the income and avails of my estate, in such manner as he may think best, for the interest of my estate, until the estate shall be fully and finally settled, in the manner provided in this my will.

*Ninth.* After the children named in the fifth item of this my will, or any of them, shall attain to the age of twenty-one years, the executor hereafter named may make such advances or payments to them as he may think he can, consistently with the provisions of this my will.

*Tenth.* In the event of the death of my wife before the children named in the fifth item of my will shall attain the age of twenty-one years, or in the event that my said wife shall wish the whole or any part of said property disposed of, or not wish to keep the family together, in the manner provided in the fifth item of this my will, then and in that case I order, authorize and direct the executor hereinafter named to so sell and convey all or any part of the personal and real estate mentioned in said fifth item, as soon as can be conveniently done, and provide and support the family in such other manner as he may see fit.

*Eleventh.* After the death of my said wife, and after the youngest child mentioned in the fifth item of this my will, or the survivor, shall attain the age of twenty-one years, then the executor of this my estate shall pay over to the persons named in this my will as legatees, or their survivors, all such sums as they may respectively be entitled to, according to the provisions of this my will, as expressed in the twelfth item thereof.

*Twelfth.* I hereby will and bequeath all of the rest, residue and remainder of my estate, after deducting the charges for executing this my will, which has not been heretofore disposed of, to my son, James C. Cooper, my daughter, Adelaide Cooper, and Clarissa Cornelia Cooper, and to Ann Amelia Comstock, daughter of my wife, and my

grandsons George G. Barbour and William C. Barbour in equal portions, share and share alike, except that the portion to William C. Barbour shall not exceed five hundred dollars, and that such portions be paid over to them by my executor, respectively, at the times and in the manner prescribed in this my will.

*Thirteenth.* It is my will and intention that in the event of the death of any of the legatees mentioned in this my will, leaving a child or children, that such child or children shall receive the portion to which the parent would be entitled if living, anything herein contained to the contrary notwithstanding.

*Fifteenth.* It is my will and intention that the executor shall be fully paid and satisfied for all the trouble, expense and charges which he may incur in the executing of this my will, and that he shall receive from my estate such sum for services, trouble and expenses, over and above the amount allowed by law, as the surrogate of the county of Oswego shall deem just and reasonable."

The accounting took place in September, 1867, and in addition to the facts hereinbefore stated, it was admitted that the widow elected to keep the family together, and occupied the homestead, and received the funds and means for the support of the family from the executor. The account, schedule E, gives the dates and amounts of the payments by the executor for that purpose. That the contestant lived with and as a member of the family of the widow, from the death of her father, the testator, until April, 1861; received her entire support and maintenance from the estate of the testator, furnished as aforesaid; and that Clarissa was so supported and maintained in the family of the widow, until the family was broken up in 1863; and George G. Barbour was, during the same time, a member of said family, and boarded with them. That neither the contestant, Mrs. Fonda, nor her sister Clarissa,

had any property or means of support except such as was furnished by the executor aforesaid, from the estate of the said testator, and that the support and maintenance so furnished was a reasonable and proper maintenance for them respectively, and no more than reasonable and according to their estate and condition in life, and was suitable and proper for the family.

That the accounts submitted by the executor contained and set forth the sums received by the executor from the estate real and personal of the said testator, and correctly and truly show the disposal thereof.

And it was agreed that if his honor the surrogate should decide that the executor was entitled to be allowed for the amounts paid for the support of Mrs. Fonda, the amount so to be allowed was to be ascertained under the direction of the surrogate, if the parties should differ.

The hearing before the surrogate on the accounting took place in the fall of 1867, and on the 31st day of December in that year, he made and recorded a summary statement of the accounts of the executor, as follows:

"Estate of Cortland C. Cooper in acct. with Joel B. Penfield, executor.

Dr. To paid on debts as per account on file, and expenses of settling estate, including funeral expenses and amt. paid heirs, as shown in schedules B, C, D and E of account, $25,010 52

Balance for distribution . . . . . . . . 554 14

$25,564 66

Cr. By recd. for personal property sold at auction, as per account on file, . . . . .

By do. at private sale and amt. collected on debts, . . . . . . . . . . . . $19,109 49

Recd. for interest and increase, . . . . . 6,455 17

$25,564 66

And he found and decided that the executor had accounted for the whole of the estate, and that he had not made any profit from any increase thereof. And he ordered and decreed that the said balance of $554.14, remaining in the hands of the executor, be distributed to the legatees under the will, according to law.

Schedule " C," referred to in the summary, contained a statement of all moneys paid for funeral and other necessary expenses, for said estate, together with the reasons and objects of such expenditures, and in the whole amounted to $3845.83. Schedule D contained a statement of all claims of creditors, presented and allowed, and of all moneys paid by the executor to the creditors, and their names and times of payment, amounting in all to $13,066.47.

Schedule E contained a statement of all moneys paid to the legatees, or next of kin of the testator, and all money paid for the support of his family in accordance with the 5th, 7th and 10th items of the will, amounting in the whole to $6273.21, but no items thereof are inserted in the case on appeal, except as follows :

" 1860, Sept. 24. Adelaide Cooper, on account legacy, &c.,
will of, $800, as per items and receipt [200]    $75.00
1861, Jan. 5. Adelaide Cooper, on account legacy,
[215] _____ 100.00
"      19. Adelaide Cooper, on account legacy,
[216] _____ 75.00
"      20. Adelaide Cooper, on account legacy,
[229] _____ 30.00"

There was nothing before this court to show how much the appellant received of the said sum of $6273.21, towards her support and maintenance; nor how much of it was received by the other beneficaries under the will, for their support; or how much thereof was paid to the other legatees of the $3200 under the fourth item of the will.

Fonda *v.* Penfield.

And the court had no information whatever of what schedule B contained.

The appellant claims, in her appeal, that the items of expenditure for the support of the appellant in schedule E ought not to have been allowed to the executor, and that each and every of the items in that schedule ought not to have been allowed.

*C. T. Richardson,* for the appellant.

*Wm. F. Allen,* for the respondent.

*By the Court,* FOSTER, J.   The claim of the appellant has no meritorious foundation, and if sustained at all, it must be because the law, under the circumstances of the case, will award it to her, against good conscience and to the manifest injury of one who has done not only the best that he could to carry out the intentions of the testator, but evidently the best that could be done, for the welfare of the other members of the family of the testator, and of the appellant also.

It is conceded that all the expenditures of the executor, as well for the family as for herself, were necessary to their support, and were all proper and reasonable in kind and cost.   And what she claims is, that after exhausting in her support, and in the specific payments to her, specified in schedule E, nearly or quite all of the $800, which was her share of the $3200 bequeathed in the fourth item of the will, the executor shall, from his individual means, pay her the whole sum of $800.   She admits the kindness of the executor towards all the members of the family, including herself.   She does not question his motives; she does not deny that he has honestly expended upon her the most if not all of her share; or that such expenditure has been made for her comfort; or that she has been benefited to the extent of the last dollar which he has so dispensed.

But she claims that the law gives it to her over again, and that therefore she will have it. If the law clearly gives it to her, she must have it, for it is our duty to do what the law requires, though in a given case it may work injustice between the parties.

It seems from the terms of the will, that in some way the testator was a trustee for his children, including the appellant, of a sum of $3200. Whether it was a trust in real or personal estate, or what were the terms of the trust, we are not informed. We are led from the statement of the will to infer that the trust fund, at least before the execution of the will, had been mingled with his own estate. And it is claimed that the respondent has become the trustee of the legatees named in the fourth item of the will, and that as their trustee, he had no right to trench upon the fund, even to supply them with necessaries, until so ordered to do by the court.

In my view of this case it is not necessary to ascertain definitely what a trustee may or may not do, without the order of the court, for the benefit of the trust estate, or to provide for the support of the *cestui que trust*. For I am not aware, if this $3200 was clearly a trust fund, in the hands of the testator, and that he was clearly a trustee for the legatees therefor, that he could continue *that* trust after his death, by his last will and testament, whether the trust in his hands were of real or of personal estate. It is a well settled rule, that when the sole trustee, or the survivor of several trustees dies, the trust cannot by any act of his, be continued in another person.

Nor is there anything in the fourth item of the will which makes that sum of $3200 a debt against the estate, in the ordinary acceptation of that term. All we know of it is what the will discloses, and whether it was a legal claim in their behalf, as against the testator, does not appear. It only appears that he meant to provide for it in

his will, and I think he has made such provision in the form of a legacy.

It is true that though the testator could not continue the trust, whatever it was, in his executor, yet if it was a debt against him, the executor would of course be bound to pay it out of the assets, if they were sufficient for that purpose. But it has not been treated as a debt by either party to this controversy, but is claimed on the part of the appellant, either as a trust fund, or as a legacy; and I think it is 'clearly the latter. And the argument of the appellant's counsel seems to concede, that if the expenditures which the executor made for the support of the appellant had been first sanctioned by an order of the court, then the executor would have been justified, as trustee, in the expenditures which he made.

The fourth item charged the executor with the care and control of the portion of the $3200 bequeathed to each of the legatees (except the share of James C. Cooper) until they should severally attain the age of twenty-one years, and it was made his duty, by the terms of the will, to provide for their support and maintenance out of the avails' of the estate, until they should reach that age.

A general guardian who had such a fund in his hands, belonging to his infant ward, who had no other means of support, would have the right to apply to the court for an order authorizing him to expend so much of the fund as was necessary to the support of the infant, and in case no previous application was made, the court would allow, in his account, for all such expenditures as were clearly proved to be for necessaries; requiring the guardian to prove, beyond all dispute, that the expenditures were necessary and at reasonable prices.

I think as to the disposition of this fund, and the furnishing of such things as were necessary for the appellant, the powers expressly delegated to the executor by the will

The People *v.* Ransom.

clothed him, to that extent, with the same duties and rights which by law are devolved upon a guardian; and that the court not only has the power, but that under the circumstances, it is its duty, to sanction the acts of the executor, in the expenditures made for the appellant.

The decree of the surrogate should be affirmed.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster, Mullin* and *Morgan,* Justices.]